IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BOB FOUNTAIN, a citizen of the United Kingdom, | ) ) ) |
| | ) Case No. 04 C 6778 |
| Plaintiff, | ) ) |
| v. | ) ) |
| PAMELA H. LOHAN, an Illinois resident, | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Bob Fountain ("Plaintiff") brought a two-count complaint against Defendant Pamela Lohan ("Lohan") for breach of contract and specific performance. Defendant now moves for summary judgment, contending that she was entitled to cancel the sales contract in issue and that Plaintiff is not entitled to lost profits. For the reasons discussed below, the Court denies Defendant's motion.

## BACKGROUND

**I.  Parties and Jurisdiction**

Plaintiff is a citizen of the United Kingdom, residing in Beamish County, Durham. (R. 3-1; First Am. Compl. at ¶ 1.) Plaintiff has owned the Aston Workshop since 1986. The Aston Workshop is a business in Great Britain that restores and resells Aston Martin automobiles. (R. 32-1; Exs. F-J Pl.'s Stmt. Uncont. Mat. Facts Local Rule 56.1(b)(3)(A) and (B) ("Exs. F-J Pl.'s Facts"), Ex. G at ¶ 2.) Defendant is a citizen of the State of Illinois, residing in the City of Chicago, County of Cook. (R. 3-1; First Am. Compl. at ¶ 2.) At the time the parties entered into

1

the contract in issue, Plaintiff owned a 1966 Aston Martin Volante convertible (the "Car"). (R. 23-1; Def.'s Stmt. Mat. Facts ("Def.'s Facts") at ¶ 3.)

The Court has subject matter jurisdiction over this action through diversity of citizenship. *See* 28 U.S.C. § 1332(a).

## II.   Pre-Contractual Correspondence and Negotiations

Lars Lohan ("Lars") is the son from a previous marriage of Defendant's ex-husband, Dirk Lohan. (R. 28-1; Pl.'s Affirmative Stmt. Facts Local Rule 56.1(b)(3)(B) ("Pl.'s Facts") at ¶ 3.) The Internet website that listed the Car for sale listed Lars as the designated contact. (R. 32-1; Exs. F-J Pl.'s Facts, Ex. G at ¶¶ 3, 5.) On or about June 30, 2004, Plaintiff contacted Lars regarding purchasing the Car. (*Id*. at ¶ 5.) Over the next several weeks, Plaintiff and Lars exchanged a series of e-mails negotiating that purchase. (*Id*. at 5.)

On July 19, 2004, after Defendant and Mr. Lohan obtained a divorce, Defendant sent Lars an e-mail stating that she would like him to continue selling the Car and thanking Lars for handling the sale. (R. 28-1; Pl.'s Facts at ¶ 6.) On July 30, 2004, Defendant sent Lars an e-mail confirming that she would pay Lars a 10% commission of the final sales price for the Car if Lars sold the Car for more than $100,000. (*Id*. at ¶ 7.) In that same chain of e-mails, Lars notified Defendant that Plaintiff was a prospective buyer who restored Aston Martin automobiles and was "in a position to fix the [C]ar and still make some money from a resale." (*Id*. at ¶ 18.)

## III.   The Contract

On or about August 4, 2004, Plaintiff entered into a written agreement with Defendant to purchase the Car for $140,000 (the "Contract"). (R. 23-1; Def.'s Facts at ¶¶ 4, 5.) The Contract contains an exclusivity provision, which states that Defendant will reserve the Car for sale to

2

Plaintiff through August 16, 2004, provided that Plaintiff pay Defendant a deposit of $10,000 by August 13, 2004. (R. 3-1; First Am. Compl., Ex. A.) The Contract also states that Plaintiff had until August 16, 2004 to inspect the Car; if Plaintiff was not satisfied with the condition of the Car, then Defendant would refund the $10,000 deposit. (*Id.*) Additionally, the Contract specifies that "[u]pon receipt of payment in full by Buyer, all title and interest in the vehicle shall transfer to Buyer." (*Id.*) The Contract does not set forth a date upon which total payment is due, nor does it contain any terms regarding delivery. (*Id.*) Lars drafted the Contract.[1] (R. 28-1; Pl.'s Facts at ¶ 19.)

On or about August 12, 2004, the parties formally amended the Contract through an addendum, which "extends the time allowed for Buyer . . . to inspect the vehicle . . . [to] August 23rd, 2004." (R. 3-1; First Am. Compl., Ex. A.) Lars prepared the text of that August 12, 2004 addendum (the "Addendum"). (R. 28-1; Pl.'s Facts at ¶ 20.)

## IV. Post-Contractual Negotiations, Correspondence and Actions

On August 5, 2004, Lars sent Defendant an e-mail setting forth a procedure for transferring ownership of the Car. (R. 28-1; Pl.'s Facts at ¶ 14.) The e-mail described the procedure as follows: (1) Defendant will deliver the Car to Plaintiff's shipping agent; (2) Plaintiff's shipping agent will notify Plaintiff of his receipt of the Car; (3) upon that notification, Plaintiff will send Defendant the remaining $130,000; and (4) Defendant will release the Car to

---

[1] Defendant did not properly respond to a number of Plaintiff's Rule 56.1 additional facts. (*See*, *e.g.*, R. 37-1; Def.'s Reply to Pl.'s Add'l Stmt. Facts at ¶ 19.) Instead of admitting or denying a fact and providing the basis for her response, Defendant frequently chose to deny the materiality of the additional fact. Where Defendant's response consists only of a denial of materiality, the Court will deem admitted Plaintiff's factual allegations where they are supported by the record.

3

be shipped to the United Kingdom once she confirms that she has received the $130,000. (*Id*.) In e-mails dated August 18 and 24, 2004, Lars again described this delivery procedure to Defendant. (*Id*. at ¶¶ 15, 16.)

In accordance with the Contract, Plaintiff provided Defendant with a $10,000 deposit on or before August 13, 2004. (R. 23-1; Def.'s Facts at ¶ 20.) Plaintiff's agent inspected the Car on or about August 16, 2004. (R. 28-1; Pl.'s Facts at ¶ 25.) Two days later, Fountain told Lars over the phone that he wished to proceed with the transaction. (*Id*. at ¶ 26.) Lars relayed this information to Defendant in an e-mail dated August 18, 2004. (*Id*. at ¶ 27.) On August 24, 2004, Defendant sent Lars an e-mail thanking him for his efforts in selling the Car. (R. 31-1; Exs. A-E Pl.'s Stmt. Uncont. Mat. Facts Local Rule 56.1(b)(3)(A) and (B) ("Exs. A-E Pl.'s Facts"), Ex. A(E).)

In mid-August 2004, Eric Jeffries agreed to purchase the Car from Plaintiff for the sum of £150,000(UK), after Plaintiff restored the Car. (R. 32-1; Exs. F-J Pl.'s Facts, Ex. J at ¶ 4.) At no time on or before August 27, 2004 did Plaintiff enter into a written contract with Mr. Jeffries or any other third party to sell the Car, nor did Plaintiff inform Defendant that there was a third party interested in buying the Car. (R. 23-1; Def.'s Facts at ¶¶ 29, 31, 32.)

Plaintiff's shipping agent received the Car on August 24, 2004. (R. 28-1; Pl.'s Facts at ¶ 32.) Defendant, however, took the Car back from Plaintiff's shipping agent the following day. (*Id*. at ¶ 32.) Also on August 25, 2005, Lars forwarded Defendant an e-mail from Plaintiff stating that Plaintiff would transfer the remaining amounts owed on the Car on the following Monday. (*Id*. at ¶ 31.) Plaintiff never received confirmation from his shipper that Defendant had delivered the Car, (*id*. at ¶ 33), and Plaintiff never tendered the remaining $130,000 to

4

Defendant. (R. 23-1; Def.'s Facts at ¶ 23.) On or about August 27, 2004, Defendant informed Plaintiff via facsimile that she was canceling the Contract. (*Id*. at ¶ 24.) On October 27, 2004, Plaintiff sued Defendant, claiming that Defendant breached the Contract by refusing to complete the sale of the Car. (R. 3-1; First Am. Compl. at ¶ 11.)

## ANALYSIS

### I. Legal Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Id.* at 255, 106 S. Ct. at 2513. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004). With these standards in mind, the Court turns to the merits of Defendant's motion.

### II. Whether Defendant Was Entitled To Cancel The Contract On August 27, 2004

Defendant makes two main arguments in support of her claim that she was entitled to cancel the Contract: (1) Plaintiff breached the Contract by refusing to pay for the Car until after it was delivered to his shipping agent; and (2) Plaintiff failed to pay Defendant the full purchase price in a timely manner. (R. 23-1; Def.'s Mot. Summ. J. at 5-10.) Genuine issues of material fact preclude the Court from granting Defendant's motion for summary judgment on either of these grounds.

### A. Plaintiff's Alleged Breach

Defendant argues that Plaintiff breached the Contract by withholding payment until Defendant transferred the Car to Plaintiff's shipping agent. According to Defendant, Plaintiff's alleged breach relieves her of her contractual obligations. Plaintiff responds that he was merely acting in accordance with the parties' agreed-upon delivery procedure as set forth in Lars' August 5, 2004 e-mail. (R. 29-1; Pl.'s Mem. Opp'n Def. Mot. Summ. J. at 9-10.) Defendant contends that the August 5, 2004 e-mail was not part of the Contract because: (1) Plaintiff has judicially admitted that the Contract and the Addendum constitute the entire agreement between Defendant and Plaintiff; (2) the parol evidence rule bars Plaintiff from introducing extrinsic evidence to supplement the Contract; and (3) Lars was not Defendant's agent and had no authority to enter into negotiations on her behalf. The Court finds none of these arguments persuasive.

#### 1. Judicial Admission

In support of her argument that Plaintiff breached the Contract, Defendant claims that the entire agreement between herself and Plaintiff is contained in the Contract and the Addendum. (R. 37-1; Def.'s Reply Supp. Mot. Summ. J. at 4.) Defendant argues that by attaching the

6

Contract and the Addendum to the First Amended Complaint, Plaintiff has judicially admitted "what the contract is and what documents constitute the contract," which precludes Plaintiff from relying on any extrinsic evidence of an agreed-upon delivery procedure to explain or supplement the Contract. (*Id*. at 3-4.) Not so. Under Federal Rule of Civil Procedure 8(a)(2), a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Coney v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed.2d 80 (1957). In the First Amended Complaint, Plaintiff provided Defendant with adequate notice of the nature of his claim. The Federal Rules of Civil Procedure do not require that he do more. Plaintiff's failure to attach certain e-mails to the Complaint prior to the commencement of discovery does not preclude him from relying upon those e-mails during the litigation.

### 2. Parol Evidence

Defendant also relies on the parol evidence rule to try to prevent Plaintiff from introducing extrinsic evidence to supplement the Contract. (R. 37-1; Def.'s Reply Supp. Mot. Summ. J. at 10-11.) Under the Illinois Uniform Commercial Code ("UCC"), "[p]arol or extrinsic evidence may be introduced to show additional consistent terms of a contract where the writing is found to be incomplete or to explain ambiguities." *Johnson v. Flueckiger*, 81 Ill. App. 3d 623, 624, 37 Ill. Dec. 224, 226, 401 N.E.2d 1317, 1319 (2d Dist. 1980); *Global Link Commc'ns, Inc. v. Homisco, Inc.*, No. 98 C 0180, 1998 WL 774981, at *2-3 (N.D. Ill. Oct. 27, 1998); 810 Ill. Comp. Stat. Ann. 5/2-202 (West 2005). In this case, the Contract is incomplete, as it does not contain an integration clause, or terms setting forth a procedure for delivery of the Car or a

7

deadline for final payment. (R. 3-1; First Am. Compl., Ex. A.) Therefore, the parties may supplement the Contract with evidence of consistent additional terms. *See* 810 Ill. Comp. Stat. Ann. 5/2-202 (West 2005).

Plaintiff has attached numerous e-mails between himself, Lars and Plaintiff that set forth a procedure for transferring ownership of the Car. According to the e-mails of August 5, 18 and 24, 2004, the procedure is as follows: (1) Defendant will deliver the Car to Plaintiff's shipping agent; (2) Plaintiff's shipping agent will notify Plaintiff of his receipt of the Car; (3) after receiving that notification, Plaintiff will send Defendant the remaining $130,000; and (4) after Defendant confirms that she has received the $130,000, she will release the Car to be shipped to the United Kingdom.[2] (R. 31-1; Exs. A-E Pl.'s Facts, Ex. A(D), Ex. A(H), Ex. D at 17-18.) Plaintiff has also submitted his own affidavit and that of Lars as further support. (R. 32-1; Exs. F-J Pl.'s Facts, Ex. G at ¶¶ 7, 17, Ex. H at ¶¶ 8, 15, 28, 31.)

Defendant argues that Plaintiff's proposed delivery terms, which require Defendant to transfer the Car to Plaintiff's shipping agent before she can receive the full purchase price, directly conflict with the language in the Contract stating "[u]pon receipt of payment in full by Buyer, all title and interest in the vehicle shall transfer to Buyer." (R.23-1; Def.'s Mot. Summ. J. at 5-7.) Defendant has not established, however, that transferring the Car to Plaintiff's shipping agent constitutes a transfer of title and interest to Plaintiff. Therefore, the delivery terms are not inconsistent with the terms of the Contract as a matter of law, and the Court will not preclude

---

[2] The Court will not consider any pre-contractual communications in interpreting the Contract because "[i]n Illinois, a written contract is presumed to include all material terms agreed upon by the parties, and any prior negotiations or representations are merged into that agreement." *Prentice v. UDC Advisory Servs., Inc.*, 271 Ill. App. 3d 505, 514, 207 Ill. Dec. 690, 696, 648 N.E.2d 146, 152 (1st Dist. 1995).

Plaintiff from introducing extrinsic evidence of the delivery terms in his opposition to Defendant's motion for summary judgment.

### 3. Agency

Next, Defendant argues that Lars was not her agent and did not have the authority to agree to a delivery procedure with Plaintiff. (R. 37-1; Def.'s Reply Supp. Mot. Summ. J. at 7-8.) "The existence of an agency relationship is a question of fact." *Podolsky v. Alma Energy Corp.*, 143 F.3d 364, 370 (7th Cir. 1998) (citations omitted); *Caligiuri v. First Colony Life Ins. Co.*, 318 Ill. App. 3d 793, 800, 252 Ill. Dec. 212, 218, 742 N.E.2d 750, 756 (1st Dist. 2000). The determination of whether an agency relationship exists and the scope of that relationship should be decided by the trier of fact, "unless the parties' relationship is so clear as to be undisputed." *Plooy v. Paryani*, 275 Ill. App. 3d 1074, 1086, 212 Ill. Dec. 317, 327, 657 N.E.2d 12, 22 (1st Dist. 1995) (citations omitted).

Here, Plaintiff has set forth ample evidence of an agency relationship between Lars and Defendant to raise a genuine issue of material fact. For example, on July 19, 2004, Defendant sent Lars an e-mail stating that she would like to continue selling the Car and thanking Lars for handling the sale. (R. 28-1; Pl.'s Facts at ¶ 6.) On July 30, 2004, Defendant sent Lars an e-mail confirming that she would pay Lars a 10% commission of the final sales price for the Car if Lars sold the Car for more than $10,000. (*Id*. at ¶ 7.) Lars prepared the Contract and the Addendum. (*Id*. at ¶¶ 19, 20.) On August 24, 2004, Defendant sent Lars an e-mail thanking him for his efforts in selling the Car. (R. 31-1; Exs. A-E Pl.'s Facts, Ex. A(E).) Additionally, Lars states in his affidavit that "[a]t all times relevant to this transaction I was acting on behalf of [Defendant]" (R. 32-1; Exs. F-J Pl.'s Facts, Ex. H at ¶ 34.) Accordingly, whether or not Lars was Defendant's

9

agent is a material issue of fact.

### B. Plaintiff's Alleged Failure To Pay Defendant In A Timely Manner

Defendant also argues that she was entitled to cancel the Contract because Plaintiff did not pay Defendant the entire purchase price for the Car in a timely manner. Defendant claims that full payment was due before the end of the exclusivity period set forth in the Contract.[3] (R. 23-1; Def.'s Mot. Summ. J. at 7-9.) She arrives at this conclusion two different ways. First, Defendant interprets the end of the exclusivity period as the deadline for final payment. (*Id*. at 7.) Second, Defendant states that "Illinois law presumes that a reasonable time for payment is allowed the Plaintiff," and argues that a reasonable time should be defined as the exclusivity period. (*Id*.)

The Court finds neither of Defendant's arguments persuasive. First, the Contract does not set a deadline for final payment. The Court will not presume in the absence of any supporting evidence that the end of the exclusivity period is the payment deadline. Second, the Court cannot determine on a motion for summary judgment what constitutes a reasonable time. Under the UCC, when a contract fails to include a specific time provision, the time for action under the contract "shall be a reasonable time." 810 Ill. Comp. Stat. Ann. 5/2-309 (West 2005). "What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action." 810 Ill. Comp. Stat. Ann. 5/1-204(2). The determination regarding what constitutes a reasonable time "rests with the trier of fact." *GNP Commodities,*

---

[3] The exclusivity provision in the Contract states that Defendant will reserve the Car for sale to Plaintiff through August 16, 2004, provided that Plaintiff pay Defendant a deposit of $10,000 by August 13, 2004. (R. 3-1; First Am. Compl., Ex. A.) The Court need not address whether the Addendum extends the exclusivity period from August 16, 2004 to August 23, 2004 for purposes of deciding Defendant's motion.

10

*Inc. v. Walsh Heffernan Co.*, 95 Ill. App. 3d 966, 971, 51 Ill. Dec. 245, 250, 420 N.E.2d 659, 664 (1st Dist. 1981); *Hays v. Gen. Elec. Co.*, 151 F. Supp. 2d 1001, 1012 (N.D. Ill. 2001). Even if the Court could determine what constitutes a reasonable time, it is unlikely that the end of the exclusivity period would be the reasonable time because Defendant indicated her willingness to go forward with the transaction in an email she sent to Lars after the exclusivity period had ended. (R. 31-1; Exs. A-E Pl.'s Facts, Ex. A(E).) Accordingly, a material issue of fact remains as to what constitutes a reasonable time for final payment. Defendant, therefore, has failed to carry her summary judgment burden as to Plaintiff's breach of contract claim.

## III.     Whether Plaintiff Is Entitled To Lost Profits

Defendant also moves for summary judgment on Plaintiff's claim for lost profits. Defendant argues that Plaintiff is not entitled to an award of lost profits under 810 Ill. Comp. Stat. Ann. 5/2-715 (West 2005) because such damages were not foreseeable and are too speculative to be recoverable. (R. 23-1; Def.'s Mot. Summ. J. at 10-11.) The Court finds neither of these two arguments dispositive or persuasive.

The UCC defines consequential damages as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." 810 ILCS 5/2-715(2)(a). It is well established that consequential damages must be "reasonably foreseeable" to be recoverable under Section 2-715(2). *Outboard Marine Corp. v. Babcock Indus., Inc.*, No. 91 C 7247, 1995 WL 296963, at *2 (N.D. Ill. May 12, 1995), *citing Garavalia v. Heat Controller, Inc.*, 212 Ill. App. 3d 380, 383, 156 Ill. Dec. 505, 508, 570 N.E.2d 1227, 1230 (5th Dist. 1991). In Illinois, however, the party seeking to recover consequential damages need not establish that the damages

were "'expressly contemplated.'"[4] *Linc Equip. Servs., Inc. v. Signal Med. Servs., Inc.*, 319 F.3d 288, 289 (7th Cir. 2003), *citing Hadley v. Baxendale*, 9 Ex. 341, 156 Eng. Rep. 145 (1894). Foreseeability is generally an issue of fact for the jury to resolve, and "should be decided as a matter of law only where the facts demonstrate that the plaintiff could never be entitled to recovery." *Outboard Marine*, 1995 WL 296963, at *2.

Defendant argues that lost profits were not foreseeable because she was not aware of any agreement between Plaintiff and a third party for resale of the Car, and Plaintiff had not entered into a written agreement to resell the Car before August 27, 2004, the day Defendant purported to terminate the Contract. (R. 23-1; Def.'s Mot. Summ. J. at 10-11.) Those facts do not establish that Plaintiff "could never be entitled to recovery." *See Outboard Marine*, 1995 WL 296963, at *2. Before Plaintiff and Defendant entered into the Contract, Lars informed Defendant via e-mail that Plaintiff restored and resold Aston Martin automobiles. (R. 28-1; Pl.'s Facts at ¶ 18.) Moreover, if the trier of fact determines that Lars is Defendant's agent, Lars' knowledge that Plaintiff was in the business of restoring and reselling Aston Martin automobiles may be imputed to Defendant. *See Kuska v. Folks*, 73 Ill. App. 3d 540, 544, 29 Ill. Dec. 399, 402, 391 N.E.2d 1082, 1085 (2d Dist. 1979) ("a principal is deemed to have knowledge of all material facts of which his agent receives notice or acquires knowledge, while acting in the course of his employment and the scope of his authority"). Accordingly, the Court cannot say as a matter of

---

[4] Defendant argues that *Chrysler Corp. v. E. Shavitz & Sons*, 536 F.2d 743 (7th Cir. 1976), requires Plaintiff to have informed Defendant "that an actual contract for resale actually existed or was in the offering at the time of the contract." (R. 37-1; Def.'s Reply Supp. Mot. Summ. J. at 14.) *Chrysler*, however, addresses lost profits attributable to a loss of goodwill. 536 F.2d at 743. Because Plaintiff is not seeking lost profits based on a loss of goodwill, the standards set forth in *Chrysler* are not applicable.

law that it was not foreseeable that Plaintiff, a restorer and reseller of Aston Martin automobiles, would enter into a third-party agreement to resell the Car.

Nor can the Court decide as a matter of law that Plaintiff's lost profits, if any, are too speculative to be recoverable. The UCC "does not require plaintiff to prove consequential damages with 'mathematical precision.'" *Bockman Printing & Servs., Inc. v. Baldwin-Gregg, Inc.*, 213 Ill. App. 3d 516, 527, 157 Ill. Dec. 630, 638, 572 N.E.2d 1094, 1102 (1st Dist. 1991), *citing Cates v. Morgan Portable Bldg. Corp.*, 591 F.2d 17, 21 (7th Cir. 1979). Instead, "[a] recovery may be had for prospective profits when there are any criteria by which the probable profits can be estimated with reasonable certainey [sic]." *Barnett v. Caldwell Furniture Co.*, 277 Ill. 286, 289, 115 N.E. 389, 390 (Ill. 1917). For almost twenty years, Plaintiff has owned a company that restores and resells Aston Martin automobiles. (R. 32-1; Exs. F-J Pl.'s Facts, Ex. G at ¶ 2.) Viewing this fact in the light most favorable to Plaintiff, a market exists for restored Aston Martin automobiles. Moreover, Plaintiff has submitted to the Court the testimony of Mr. Jeffries, who states that he offered Plaintiff £150,000(UK) for the Car in mid-August 2004. (*Id*. at Ex. J, ¶ 4.) The existence of these facts precludes the Court from deciding as a matter of law that there are no criteria by which Plaintiff can estimate his alleged lost profits with reasonable certainty. Accordingly, Defendant has failed to carry her summary judgment burden as to Plaintiff's claim for lost profits.

## CONCLUSION

For these reasons, Defendant's motion for summary judgment is denied.

Dated: October 11, 2005

                                    **ENTERED:**

                                    _____
                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**